23 F.3d 404
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Darin PIERCE, Defendant-Appellant.
 No. 93-5386.
 United States Court of Appeals, Fourth Circuit.
 Submitted: March 29, 1994.
Decided: April 28, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Senior District Judge. (CR-92-285-G)
 Walter T. Johnson, Jr., Greensboro, North Carolina, for Appellant.
 Benjamin H. White, Jr., United States Attorney, Lisa Blue Boggs, Douglas Cannon, Assistant United States Attorneys, Greensboro, North Carolina, for Appellee.
 Before PHILLIPS and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Richard Darin Pierce appeals his conviction for possessing with the intent to distribute cocaine hydrochloride in violation of 21 U.S.C. Sec. 841 (1988). Pierce raises numerous challenges to the trial proceedings. Finding no error, we affirm Pierce's conviction.
 
 I.
 
 2
 Prior to trial, Pierce moved to suppress evidence seized during the search of his car. The district court denied the motion, holding that the officer reasonably believed that Pierce was speeding, that the officer detained Pierce long enough to check his driving record, and that Pierce voluntarily consented to the search.
 
 
 3
 The evidence at trial demonstrated that North Carolina State Trooper Ed Lowery stopped a white Chevrolet Caprice driven by Richard Pierce after observing the car traveling approximately seventy-five miles per hour. After Lowery requested that Pierce produce his driver's license and vehicle registration and accompany him to the squad car, Pierce gave Lowery a copy of a rental agreement which showed that the lease had expired. Pierce informed Lowery that he and his two companions were traveling to Atlanta to enroll at Georgia Tech. However, the passengers told Trooper Cardwell that they were heading to Atlanta to visit relatives.
 
 
 4
 Lowery issued Pierce a warning ticket due to his apparent speeding and informed Pierce that he was free to leave. Lowery testified that when he asked Pierce whether he "had any illegal alcohol, weapons or contraband" in the car, Pierce responded that he did not have anything to hide and authorized Lowery to look through the car.[1] With the three persons standing off to the side of the car, Lowery searched the vehicle, finding two beepers, a cellular phone, and a package of cocaine in a garment bag in the trunk.[2] As Lowery requested the three to put their hands on top of the car, Pierce ran down the embankment into the woods and jumped a fence. Officers searched for Pierce and apprehended him about an hour later.
 
 
 5
 Agent Pendergrass of the North Carolina State Bureau of Investigation testified that the street value of the cocaine was between twenty and twenty-five thousand dollars.[3] He also stated that drug dealers often carry beepers.
 
 
 6
 Testifying for the defense, Vita Tilghman stated that before they departed Pennsylvania, she and Pierce left the car unguarded for a few minutes. Chester police officer Jack Azpell testified that he intercepted a package, addressed to George Pierce--Defendant's cousin--containing a number of hair spray cans with cocaine in the bottom.
 
 
 7
 Pierce testified that he had just gotten out of prison, was on parole, and had received permission to travel to Florida. Upon returning, Pierce was scheduled to meet his parole officer on Friday, June 26. Pierce testified that he left Pennsylvania on Tuesday to make a quick trip to Atlanta before his Friday appointment. He denied any knowledge of the cocaine and denied authorizing Lowery to search his car. He stated that the reason he fled was because he was afraid that he had violated his Pennsylvania parole. Pierce agreed that he did not see the cocaine when it was removed from his bag. Pierce also testified that he was first charged by the State of North Carolina for this offense, was released on bond, and had failed to appear at a scheduled hearing in a county court. He said that he spoke by phone to the bondsman, denied telling the bondsman that he was in Pennsylvania, but admitted that he did not tell the bondsman where he was.
 
 
 8
 In rebuttal, the bondsman testified that after Pierce missed his court date, he talked with Pierce. He also stated that Pierce refused to tell him where he was. Eventually, the bondsman caught Pierce in Atlanta.
 
 
 9
 After being convicted, the district court sentenced Pierce to 120 months of incarceration, and eight years of supervised release. Pierce appeals.
 
 II.
 
 10
 Pierce argues that the district court erred in admitting evidence obtained during a search of his vehicle. Pierce contends that the stop of his car was pretextual; that even if the initial stop was legal, the detention continued long beyond its permissible scope; and that the purported consent to search was tainted and rendered ineffective. We disagree.
 
 
 11
 Under the Fourth Amendment, Lowery was justified in making a warrantless investigatory stop of Pierce's car because he reasonably suspected, based on specific and articulable facts, that the occupants were engaged in unlawful activity. Michigan v. Long, 463 U.S. 1032 (1983). Moreover, an officer may stop a car for a traffic violation even if he would not have done so but for his unsubstantiated suspicions of other criminal activity. United State v. Hassan El, 5 F.3d 726, 730 (4th Cir.1993), cert. denied, 62 U.S.L.W. 3640 (U.S.1994) (No. 93-7067).
 
 
 12
 At the suppression hearing, Lowery testified that while operating a stationary radar machine on Interstate 85, he observed two cars travelling at an excessive rate of speed. Lowery could not determine the exact speed of the two cars because a tractor trailer blocked his radar but estimated that the two cars were going seventy-five miles per hour. As Lowery's car neared the two cars, one car sped ahead and one car slowed down. Lowery stopped the slower car and radioed ahead to have the other car stopped. The slower car was Pierce's. Under these circumstances, we agree that there was reasonable suspicion for Lowery to stop Pierce's car for speeding.
 
 
 13
 Pierce also contends that his consent was involuntarily given. We review the district court's finding in this respect for clear error. United States v. Analla, 975 F.2d 119, 125 (4th Cir.1992), cert. denied, 61 U.S.L.W. 3714 (U.S.1993). Here, Pierce gave his consent after he had been lawfully detained, after his driver's license and rental agreement were returned to him, and after he had been told he was free to leave. The district court's finding that Pierce's consent was freely given in this situation is not clearly erroneous.
 
 
 14
 In a related argument, Pierce argues that when Lowery asked him for consent to search his car, Lowery exceeded the scope of the detention for speeding. As noted earlier, the district court properly found that Pierce voluntarily consented to the search. This finding disposes of this argument. Moreover, as the district court properly found, the detention was brief and Lowery's investigation was conducted expeditiously.
 
 III.
 
 15
 Pierce also claims that the admission of Officer Pendergrass's testimony about how beepers are used in the drug trade and the estimated street value of the seized drugs violates Fed.R.Evid. 701.[4] However, at trial, Pierce merely objected to the relevance of the disputed evidence. Because the objection at trial bears little, if any, similarity to the claim asserted on appeal, it is reviewed only for plain error. United States v. Olano, 61 U.S.L.W. 4421, 4423 (U.S.1993). Given the overwhelming evidence of guilt, we find that Pierce's substantial rights were not violated. Furthermore, we note that even if the objection had been properly preserved, the error, if any, was harmless in this case.
 
 IV.
 
 16
 Pierce asserts that the bondsman's testimony about missing his bail meeting should not have been admitted because the probative value was minimal and the testimony was highly prejudicial in violation of Fed.R.Evid. 403. Reviewing the district court's decision to allow the testimony for an abuse of discretion, see United States v. Masters, 622 F.2d 83, 88 (4th Cir.1980) (admitting evidence under Fed.R.Evid. 403 is within sound discretion of trial court); Hospital Bldg. Co. v. Trustees of Rex Hosp., 791 F.2d 288, 294 (4th Cir.1986) (allowing rebuttal evidence is reviewed under abuse of discretion standard), we affirm.
 
 
 17
 Pierce testified that he fled not because he feared prosecution but rather that he feared his Pennsylvania parole would be revoked. On cross-examination, he was asked if, while the charges arising out of the indictment were pending in state court, he failed to appear in court and if the bondsman had to search for him. Pierce was vague with his response. Davis's testimony shed light on Pierce's testimony and also rebutted Pierce's allegation that he initially ran from Lowery because he feared his parole would be revoked. Thus, we find that the district court did not abuse its discretion in admitting into evidence the rebuttal testimony.
 
 
 18
 Pierce's numerous allegations of error are meritless. Accordingly, we affirm the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Pierce refused to sign a consent to search form
 
 
 [2]
 Lowery testified, that while preparing for trial, investigators examined Pierce's luggage and noted a hair spray can with a concealed compartment. When the bottom was unscrewed, they found another package of cocaine
 
 
 [3]
 The parties stipulated that the quantity of cocaine found in the garment bag was nine hundred and eighty-eight grams and the quantity in the hair spray can was forty grams
 
 
 [4]
 Pendergrass, an officer with seventeen years of experience and involved in "well over five hundred" cocaine investigations, was not formerly qualified as an expert under Fed.R.Evid. 703